PETER BENTLEY, receiver, &c., appellant,

*v.*

CLARENCE E. F. HETRICK et al., respondents.

[Decided May 20th, 1929.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"At a meeting between Walter Reid, J. Herbert Reid and Clarence E. F. Hetrick, a project was discussed for the erection of several hotels at Asbury Park. Hetrick had a verbal option for the purchase, from the estate of James A. Bradley, of three city blocks of land on which it was proposed to erect the hotels, and the project contemplated the investment of upward of $9,000,000. As a result of the meeting, the Bradley Hotels System, Incorporated (hereinafter called Bradley Company), was incorporated July 27th, 1923. Hetrick obtained a written option, dated July 27th, 1923, for the

purchase of said three city blocks from the executor of the Bradley estate for $270,000, and at a meeting of stockholders of the company held July 31st, 1923, a resolution was adopted to take said option over, paying Hetrick therefor $5,000, which he had paid the Bradley estate, and one hundred thousand shares of the common stock of the company, without par value. Thereupon Hetrick directed that fifty-one thousand of said shares be issued to him, to the two Reids and to various other persons who had been induced to join the enterprise and that forty-nine thousand shares be donated to the company's treasury. A board of fifteen directors was elected, including the two Reids and Hetrick. J. Herbert Reid was elected president, Hetrick vice-president and William A. Smith secretary and assistant treasurer, all of whom continued to hold their respective offices to May 11th, 1926, when complainant was appointed receiver of the company by this court. The original option seems to have been lost or mislaid but it either was to expire November 1st, 1923, or a payment thereon was due on that day, because the minutes of a directors' meeting held October 31st, 1923, show that the president called attention that an extension of the option for three months could be obtained upon payment of $5,000, and a resolution was adopted authorizing such payment and a written extension to February 1st, 1924, was granted. When that extension expired nothing seems to have been done until, at a directors' meeting held March 24th, 1924, a resolution was adopted requesting Hetrick to cable the executor of the Bradley estate for a ninety-day extension, but no written extension was given until May 1st, 1924, when the option was extended to July 1st, 1924. No written extension from July 1st, 1924, was offered in evidence and the minutes mention no such extension, but the minutes of a directors' meeting held August 28th, 1924, contained the following: "The question of the extension of the existing option from the Bradley estate was discussed and on motion duly made, seconded and carried it was directed that Mr. Hetrick and Mr. Smith be appointed a committee to arrange for an extension of the option for two

months on payment of $5,000" and a written extension for two months from September 1st, 1924, was obtained by Hetrick. No further action with respect to the option was taken by the directors after August 28th, 1924; in fact, no meeting of the board was held for any purpose after that date and the option lapsed November 1st, 1924. Following negotiations started in March, 1925, the Bradley estate conveyed the three blocks of land to Eastern Parkway-Bedford Avenue Company (hereinafter called Eastern Company) by deed dated May 8th, 1925, recorded May 9th, 1925, and said grantee by deed dated May 12th, 1925, recorded May 20th, 1925, conveyed the same property to Coast Holding Company.

"The bill of complaint alleges that Hetrick represented to the officers and directors of Bradley Company that it was impracticable for that corporation to proceed with the development of the land covered by the option and promised, if they would allow him or a corporation to be organized by him to take over the property covered by the option, he and said corporation would pay the creditors and stockholders of Bradley Company the full amount of their claims; that relying upon his promise said officers and directors allowed the option to expire and Hetrick organized Coast Holding Company and took title to the lands in the name of that corporation, with its knowledge of his representations and promises and the complainant sues to recover from Hetrick and Coast Holding Company the total amount paid by the stockholders for their stock in Bradley Company, the amount of creditors' claims filed with the receiver and $30,000 paid by Bradley Company for the option and the renewals thereof, the whole being a total of $95,756.67.

"There is no proof that Hetrick requested his fellow officers and directors to permit him or a corporation to take over the option or the property, or that, in such event, he or it would pay the creditors and stockholders of Bradley Company; or that he allowed, or induced his fellow directors to permit the option to lapse so that he or a corporation might purchase the property. The case which the complainant endeavored to make out is that before, at and after the direct-

tors' meeting of August 28th, 1924, all officers and directors of Bradley Company, except Hetrick, wished to dispose of the option or the property covered thereby and that Hetrick urged that the original project, namely, the raising of money to buy the land and to build hotels, be carried out; that at the meeting of August 28th, 1924, all directors, save Hetrick, favored a sale of the land, and upon Hetrick's request that further time be given him to interest capital and upon his promise that if he was unsuccessful he would dispose of the option, or the land, for a sum sufficient to pay all claims, the directors passed the motion to pay $5,000 for an extension of the option and relied on Hetrick, without further action on their part, to dispose of it in case he was unable to raise capital to buy the land and build hotels; that he failed to raise the money or to sell the option and subsequently became a stockholder and officer of Coast Holding Company, which thereafter purchased the property with knowledge of Hetrick's promise.

"First, as to the case against Coast Holding Company. In March, 1925, Isaac Marshall, a resident of Asbury Park, became interested in acquiring the property in question and at a chance meeting with Hetrick, told the latter of his interest and mentioned the price at which he thought it could be purchased. Hetrick stated that he thought he could get it for Marshall for a lower figure and endeavored to do so but failed. Thereafter Marshall, dealing directly with the executor of the Bradley estate and acting for himself and one Pettit, obtained a contract of sale at $345,000, plus about $20,000 for unpaid taxes and assessments and some interest charges. Marshall had heard of the option which Hetrick had held for the Bradley Company and before he entered into a contract with the Bradley estate he procured a letter from the executor to the effect that Hetrick's option had lapsed. Marshall requested Hetrick to join him in the new enterprise, to which Hetrick assented provided Marshall would give him an agreement whereby the stockholders of Bradley Company would be repaid their stock subscriptions. Marshall then went to the Central Trust Company

of New York to borrow money with which to finance his purchase. He and Pettit were in control of Eastern Company, a corporation of the State of New York, organized in 1921 or 1922, which corporation was then indebted to said trust company for $375,000, upon which indebtedness it was "slow" in making payments. The trust company agreed to loan Marshall and Pettit the further sum of $370,000, which was the total sum required to be paid by Marshall under his contract with the Bradley estate, and an attorney for the trust company took charge of the proceedings. Under his instructions the Eastern Company took title to the property May 8th, 1925, and gave its note for $745,000 to the trust company, endorsed by its stockholders and secured by all of its corporate stock as collateral, which note represented its total indebtedness to the trust company. Before the Eastern Company took title, Marshall informed the trust company's attorney of his desire to have Hetrick associated with Pettit and him in the purchase of the property and of Hetrick's desire for an agreement to secure repayment to the Bradley Company stockholders, and the attorney refused to commit the Eastern Company or the trust company to such an agreement but upon Marshall's insisting he advised the formation of the Coast Holding Company to take title from the Eastern Company and thereupon Marshall and Pettit caused that corporation to be incorporated April 17th, 1925, and they gave Hetrick a stock interest therein and made him its president. The Eastern Company, by deed dated May 12th, 1925, conveyed the lands in question to Coast Holding Company for the consideration of $745,000, taking mortgages for the whole purchase price and thereafter the Coast Holding Company delivered an agreement to Hetrick whereby out of the first profits realized by Coast Holding Company from the sale of its property, after paying the mortgages, interest and all expenses, Coast Holding Company agreed to pay Hetrick $36,223 to reimburse stockholders of Bradley Company for their subscriptions, it being expressly provided that the agreement should not inure to the benefit of anyone other than Hetrick.

"Hetrick denies that he ever promised the directors of Bradley Company to dispose of that company's option in the event that he was unable to raise sufficient money to finance the company's hotel projects, but if he had made such promise, the evidence fails to show that the promise was known to the Eastern Company, or to Coast Holding Company, or to anyone connected with those corporations. So far as Marshall or Pettit knew, the Bradley Company's option had expired and its stockholders and creditors had no further rights in the land. Hetrick was mayor of Asbury Park and president of the chamber of commerce of that city. In the eyes of Marshall and Pettit he was a man of prominence and influence in his community and they considered it good business to have him associated with them in the property they had agreed to purchase and through him obtain the good will of the citizens of Asbury Park. They knew that Bradley Company had failed and that its stockholders stood to lose their investment therein and they hoped, by meeting Hetrick's desire to repay them, to avoid possible antagonism and opposition from that source. Hetrick's sole interest in agreeing to become associated with Coast Holding Company appears to have been to eventually discharge a moral obligation which he felt he owed the stockholders of Bradley Company who had subscribed for their stock on the faith of his connection with that company. He had no connection whatever with Eastern Company and although, as director of Coast Holding Company, he voted for the purchase by that company from Eastern Company, he had no part in fixing the terms of the purchase. The agreement by Coast Holding Company to pay Hetrick $36,223 at a future time was wholly voluntary on the company's part and was without consideration moving to it other than Hetrick's consent to become associated with the corporation, and since the agreement specifically provides that it shall not inure to the benefit of anyone other than Hetrick, it cannot be enforced by Bradley Company stockholders even when the time arrives when according to its terms the money is payable. I shall dismiss the bill of complaint as to the defendant Coast Holding Company.

"As to the case against Hetrick. He denies, as heretofore stated, promising the directors of Bradley Company to dispose of that company's option. The proof in support of such promise must be found in the testimony of directors J. Herbert Reid and Smith. Reid's testimony is that the promise was made to Smith and him at a conference with Hetrick in October, 1924, and Smith testified that the promise was not only made at such conference, but also at the meeting of directors of Bradley Company held August 28th, 1924, and both Reid and Smith testify that Hetrick promised to sell the land. It is obvious that neither Hetrick nor Bradley Company could dispose of the land because title was in the Bradley estate and Bradley Company was without funds to take it over under the option. The minutes of a stockholders' meeting held April 5th, 1924, show that the company then had a deficit of $8,690.18 and the minutes of the directors' meeting of August 28th, 1924, show that the company then had but $5,814.41 in bank, of which $5,000 was voted to pay for an extension of the option. To realize on the option (if it was assignable) the amount claimed from Hetrick in this suit, the company would have had to find a purchaser willing to pay $95,756.67 for it and the purchaser would have had to pay the Bradley estate the balance due on the option.

"It appears that there was doubt in the directors' minds prior to the meeting of August 28th, 1924, as to whether the money to finance the purchase of the land and the erection of hotels would be forthcoming. There had been some general discussion as to the advisability of disposing of the option, but as to that subject the minutes are silent and at no directors' meeting had a motion or resolution been proposed to dispose of it. At the meeting of August 28th, 1924, according to Smith, the first serious discussion of the sale of the property was had. The board then consisted of thirteen directors, of whom seven were present, including Reid, Smith and Hetrick. All directors present at this meeting, except Hetrick, at first opposed an extension of the option and favored a sale. The option would then have expired in three days and

undoubtedly the time was too short to arrange for its sale; it had to be extended or it would lapse. The directors knew that Hetrick had been endeavoring, without success, to raise money but they granted his plea for further time and a motion was passed to pay $5,000 for an extension of the option to November 1st, 1924, and nothing was said in the motion about effecting a sale of the option before the time for its expiration arrived. Smith says that the meeting adjourned with the understanding that if Hetrick could not raise the money, he would arrange to dispose of the property, but the directors must have known that Hetrick could not dispose of the option or the property without formal action by the directors or stockholders. Smith's testimony is that after this meeting he was too busy to give the matter further attention and he did nothing. Reid's testimony is that after that date he was at Baltimore at the bedside of a sick brother and could give no attention to the company's affairs.

"I gather from the testimony that Hetrick was the most enthusiastic and active member of the board and that his fellow directors were willing to permit him to do all the work, but he had no more power or authority and owed no greater duty to the stockholders than the other twelve directors of the company. He was desirous that the purpose for which the company was organized should be carried out and he probably voiced his opinion to his fellow directors at informal and formal meetings. They had the right to agree or differ with him and he had but one vote to cast at board meetings. At the meeting of August 28th, 1924, the directors who favored a sale of the property could have adopted a resolution, over his opposition, to sell the property, but they did not. At that meeting he may have expressed the belief that the option or the land could be sold for a sum above the option price but, because he had always opposed such sale, he had never attempted to ascertain whether or not his belief was on a firm foundation and he was expressing no more than his opinion. It meant no personal profit to him to make a definite promise to sell the option and no director present (except Smith) says that such promise was made

at the meeting of August 28th, 1924. Had Reid understood that Hetrick had made such a promise, in his letter of September 29th, 1924, to Hetrick, Reid would have called on Hetrick to perform it, but in the letter Reid said that if nothing definite regarding the financing of the hotels had been accomplished, the disposal of the land should be taken up (not by Hetrick) by the directors of the Bradley Company or by some real estate operator. It must also be noted that although all directors present at the meeting of August 28th, 1924, had actual notice and the other directors must be presumed to have had notice that the option expired November 1st, 1924, no director called on Hetrick to make good on his alleged promise until September 8th, 1925, nearly a year later, when Reid wrote Hetrick, although the sale of the property by the Bradley estate to Marshall in April, 1925, was given much publicity in the local press. I think Smith's recollection of what was said by Hetrick at the meeting of August 28th, 1924, is at fault. His testimony was given nearly three and a half years after that meeting and he says that his recollection of what occurred at that meeting is 'rather dim.'

"The promise is also said to have been made by Hetrick at an informal conference with Reid and Smith in October, 1924. Reid wrote Hetrick from Baltimore September 29th, 1924, that the option would expire November 1st and that all directors would be chargeable with negligence if they failed to take steps to sell the lands, and telling Hetrick to call a directors' meeting at once. At the same time he sent directors Smith and Soria a copy of this letter. Early in October, 1924, Reid and Smith had a conference with Hetrick at the latter's office in Asbury Park, at which Hetrick informed them that he had been unable to raise money for the company and it is at this conference Reid and Smith say Hetrick promised to dispose of the land. At a directors' meeting held October 31st, 1923, a resolution was adopted that the directors should meet weekly, but they never did so and all subsequent meetings seem to have been held on call by the president. At the conference in October, 1924, none

of the conferees suggested that a directors' meeting be called to act on the situation. Reid and Smith knew that such a meeting was necessary—Reid had said so in his letter of September 29th, 1924, a copy of which Smith had received—and none of the ten other directors did anything about a meeting. Hetrick was under no duty to call a meeting. As a director he had no such authority and as vice-president he could act only in the absence or disability of the president. Reid was president and under the by-laws had authority on his own motion and at any time, to call a special meeting of the board. Instead of writing Hetrick, September 29th, 1924, to call such meeting and sending a copy of his letter to Smith, the secretary, he should have written Smith direct to call a meeting, or at the conference in October, 1924, Reid should have directed Smith to call the meeting forthwith. Hetrick denies that at this conference he promised to dispose of the property, but if he did, it was no promise to the corporation, and Reid and Smith knew that it was a promise impossible of performance, first, because the company did not own the land and was without funds to take title to it, and second, because corporate action, through a meeting of the board, was necessary to authorize a sale of the option. I cannot find that anything occurred at this conference which bound Hetrick to any duty to the corporation, nor can I find on any evidence in the case that he owed any greater obligation to the corporation than did his fellow directors. I shall also dismiss the bill of complaint as to the defendant Hetrick."

*Mr. Herbert Clark Gilson,* for the appellant.

*Messrs. Wall, Haight, Carey & Hartpence,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Kalisch, Black, Campbell, Lloyd, Case, Bodine, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ. 15.

*For reversal*—None.